ATTORNEY FOR HON.
THOMAS NEWMAN, JR.

James H. Voyles, Jr.
Indianapolis, Indiana

ATTORNEY FOR THE COMMISSION
ON JUDICIAL QUALIFICATIONS

Meg W. Babcock
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 48S00-0607-JD-274

IN THE MATTER OF THE HONORABLE
THOMAS NEWMAN, JR., JUDGE OF
THE MADISON SUPERIOR COURT NO. 3

## JUDICIAL DISCIPLINARY ACTION

**December 19, 2006**

**Per Curiam.**

Judge Thomas Newman's failure to do his duty has brought the judiciary into disrepute. We consider here the disciplinary consequences of his failure.

This matter comes before the Court as a result of a judicial disciplinary action brought by the Indiana Commission on Judicial Qualifications ("Commission") against the Respondent herein, Thomas Newman, Jr., Judge of the Madison Superior Court No. 3. Article 7, Section 4 of the Indiana Constitution and Indiana Admission and Discipline Rule 25 give the Indiana Supreme Court original jurisdiction over this matter.

Subsequent to the filing of formal charges by the Commission, the parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" in which the parties stipulate to certain facts concerning Respondent's behavior, agree that these facts

demonstrate violations of certain Canons of Judicial Conduct, and request the imposition of a public reprimand as an appropriate sanction. The Court, following its own review of the matter, agrees with the parties that Respondent's behavior did violate the Canons of Judicial Conduct cited by the parties and that a public reprimand is appropriate under the facts and circumstances of this case.

## Stipulated Facts

On October 23, 2000, Respondent presided over a matter in which he found the defendant, Lance Dawson, in violation of his probation. Respondent revoked Dawson's probation and sentenced him to serve the duration of an original six-year term in the Department of Correction ("DOC"). Dawson appealed. On July 18, 2001, the Indiana Court of Appeals reversed the decision, issuing an opinion that concluded Respondent had erred in revoking Dawson's probation and in sentencing him to the DOC. The Court of Appeals' opinion remanded the case to Respondent for proceedings consistent with its opinion. *See* Dawson v. State, 751 N.E.2d 812 (Ind. Ct. App. 2001). Judge Carr Darden, in a concurring opinion, wrote:

> Whereas I wholeheartedly agree with the majority's decision in this case, I write to explain that I think we should go further by ordering the immediate release and discharge of the defendant in this cause. It is obvious that the state has presented its strongest case for revocation of probation and has failed. The remote possibility that the defendant could be incarcerated another day longer while the state reviews our ruling on remand, for further proceedings consistent herein, offends my sense of fair play under the facts in this case. There is no evidence that supports further delay by the state for keeping the defendant locked up.
> I would order immediate release and discharge in this matter.

Id. at 815 (Darden, J., concurring).

That same day, the Court of Appeals sent a "courtesy copy" of the opinion via facsimile to Respondent's court. In response, Respondent told his court reporter to arrange Dawson's release, but did not specifically instruct her to prepare an order. Respondent's court reporter contacted Dawson's appellate counsel and advised him of the appeal's outcome, faxed a copy of the opinion to the DOC, and entered the following on the court's chronological case summary:

2

> Opinion – for publication handed down by the Indiana Court of Appeals concluding that trial court improperly revoked defendant's probation and remands for further proceedings . . . . Further, Judge Darden . . . [finds] that there is no evidence that supports further delay by the State for keeping the defendant locked up and would order immediate release and discharge in this matter. Judge Newman agrees and orders defendant released from DOC.

This entry was distributed to the State, Dawson's appellate counsel, and to the authorities in charge of probation, but was not sent to the DOC.

The DOC did not release Dawson until September 6, 2002 upon completion of his original term with adjustments for credit time. Sometime soon thereafter, Dawson, who was now on supervised parole, learned of the Court of Appeals' opinion and provided a copy of it to his parole officer. The parole officer made inquiries with Madison Superior Court No. 3 as to what should be done with regard to Dawson. The parole officer recalls being told by the Respondent's court reporter that she had "sent something to the prison" and "it had been taken care of." The parole officer's inquiry did not prompt Respondent or his court reporter to take any corrective action with regard to Dawson.

In January 2003, Respondent received a Notice of Tort Claim advising Respondent that Dawson was asserting a civil claim against him. At this time, Dawson still was under parole supervision. Respondent wrote on the face of the Notice, "Place in Dawson file," and instructed his court reporter to contact the DOC to determine why Dawson had not been released in 2001. She did so and was advised that the DOC did not know why Dawson had not been released in 2001. Neither the Notice of Tort Claim nor the court reporter's inquiry to the DOC prompted Respondent or his court reporter to take any official corrective action with regard to Dawson.

As a result of Respondent's failure to execute an appropriate order for Dawson's release and to provide proper supervision and instruction to his court reporter, Dawson unnecessarily spent over one year incarcerated with the DOC and one year on supervised parole. In several written and oral statements concerning this matter, Respondent failed to exhibit meaningful remorse for the effect that his neglect had on Dawson's liberty and, instead, blamed his court reporter, the DOC, and the Court of Appeals. However, Respondent now takes full responsibility for both the unfortunate events of the Dawson case and Respondent's failure (until

3

now) to accept fault for those events. He offers his apology to Dawson and his family, to his fellow judges, to the Commission, and to the Court.

## Stipulated Violations and Sanction

The Respondent and the Commission agree that Respondent's actions have violated several Canons of the Code of Judicial Conduct, namely:

- Canon 1A, which requires a judge to "observe [high standards of conduct] to preserve the integrity and independence of the judiciary," Ind. Judicial Conduct Canon 1A;

- Canon 2A, which requires a judge to "respect and comply with the law" and "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," Jud. Canon 2A;

- Canon 3B(9), which requires a judge to "dispose of all judicial matters fairly, promptly, and efficiently," Jud. Canon 3B(9); and

- Canon 3C(2), which requires a judge to "require staff, court officials and others subject to judge's direction and control to observe the standards of fidelity and diligence that apply to the judge," Jud. Canon 3C(2).

The Court agrees with the parties.

The Commission further agrees that the appropriate sanction for Respondent under the facts and circumstances of this case is a public reprimand, and that costs of this proceeding should be assessed against Respondent. After much reflection, we reach this same conclusion.

Respondent's conduct reflects discredit on him and the Indiana judicial system. It goes without saying that a trial court judge is duty-bound to carry out the orders of a reviewing appellate tribunal. That duty is at its highest when an appellate remand order affects the substantial rights and interests of a party under the trial court's control. When a trial court judge fails in this duty, the appellate relief secured by the party evaporates. Dawson can never regain the time and freedom that the Court of Appeals' opinion granted him.

A public reprimand is a blemish on a sitting judge's reputation, adversely affecting the public's evaluation of the judge's performance in office. It is not the severest sanction we could impose, and we would have been inclined to impose a harsher penalty had there not been an

agreement with the Commission. Because Respondent has (albeit belatedly) accepted responsibility for his actions, has apologized to Dawson and his family specifically and to the judicial community generally, and has agreed to accept, with the Commission's consent, a public censure in lieu of a further proceedings, we accept the parties' Conditional Agreement for Discipline. Thomas Newman, Jr., Judge in the Madison Superior Court No. 3, is hereby reprimanded, and the costs of this proceeding are assessed against him.

This terminates the disciplinary proceedings relating to the circumstances giving rise to this cause.

Shepard, C.J., and Dickson, Sullivan, Boehm, and Rucker, JJ., concur.